IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No: |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| William Lee, Governor of the State of Tennessee, in his official capacity; | ) ) | |
| | ) | Magistrate Judge: |
| And, | ) | |
| | ) | |
| David Rausch, Director of the Tennessee Bureau of Investigation, in his official capacity; | ) ) ) | |
| | ) | |
| And, | ) | JURY DEMAND |
| | ) | |
| Metropolitan Government of Nashville-Davidson County, Tennessee; | ) ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants' have violated and continue to violate Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against all Defendants, and money damages against Defendant Metro.

## PARTIES

2. Plaintiff John Doe is an adult resident of Davidson County, Tennessee.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym once his complaint has been docketed in ECF.

1

3. Defendant William Lee is the Governor of the State of Tennessee.

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

5. Defendant Metropolitan Government of Nashville Davidson County, Tennessee ("Metro") is a municipal government entity organized under the laws of the State of Tennessee and located in Davidson County, Tennessee.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

7. Plaintiff is a fifty-nine-year-old married father, grandfather, and great-grandfather.

8. Plaintiff and his wife have two grown children, three grandchildren, and two great-grandchildren.

9. Plaintiff has a career in construction, and works for a construction company.

10. Plaintiff and his family are members of a church, which they attend regularly.

11. On December 3, 1993, Plaintiff was convicted in the Davidson County, Tennessee Criminal Court of the offense of "Attempted Aggravated Sexual Battery" under T.C.A. § 39-13-504 for an offense Plaintiff committed on April 8, 1993.

12. Solely due to Plaintiff's 1993 conviction, Tennessee law deems Plaintiff a "Violent Sexual Offender" subject to lifetime registration on the sex offender registry.

13. Tennessee's laws deeming Plaintiff a "Violent Sexual Offender" and subjecting him to a panoply of obligations and restrictions were all passed several years after Plaintiff committed his offense.

### B. Plaintiff's 1993 Offense

14. Plaintiff was sentenced to a six-year sentence for his offense, all suspended to "community corrections" once he served the first six months "day for day." Plaintiff was further ordered to complete the "STOP" program, a sex offender counseling program.

15. Plaintiff completed his jail time and treatment program, and complied with his community corrections requirements. In October 1995, the Davidson County Criminal Court transferred Plaintiff's supervision to state probation at the request of the Community Corrections program.

16. Plaintiff ultimately completed his entire period of supervision with no violations.

### C. Tennessee's Sex Offender Registration and Monitoring Regime

17. In 1994, the year after Plaintiff's offense and conviction, Tennessee passed its first sex offender registry law, which required only that offenders register in a private law enforcement database.

18. In the years since then, Tennessee has repeatedly enacted laws adding to its sex offender registration regime in ways that make it more onerous, more public, and more restrictive for offenders.

19. In 2003 and 2004, Tennessee passed sweeping new restrictions on convicted sex offenders, hereinafter referred to as "SORA."

3

20. SORA imposed stringent registration and reporting requirements on statutorily-defined "sexual offenders" and "violent sexual offenders," and severely limited where sex offenders can live, work, and go.

21. In the years since then, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

22. Under present law,[2] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within ten days if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a "violent sex offender" designation on it.

23. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

    a. Name

    b. Classification of "VIOLENT"

    c. Status of "ACTIVE"

    d. Date of birth

    e. Full criminal history

    f. Residential address

---

[2] T.C.A. § 40-39-201 *et seq*.

g. Race and gender

h. Last date of information verification

i. Most recent photograph submitted to TBI

j. Driver's license and/or state identification number

k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

m. Address of Plaintiff's employer(s)

n. License plate number and description of Plaintiff's vehicle(s)

24. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

   a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

   b. Having any contact or residing within 1000' feet of the victim from Plaintiff's 1993 case, or the victim's family members;

   c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

      i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

5

ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

d. Residing with two or more other convicted sex offenders;

e. Being alone with a minor in a "private area."

f. Residing with, or having an overnight visit, in a place in which a minor is present.

25. SORA authorizes the following:

a. Public libraries may ban Plaintiff from their premises;

b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system;

26. Under SORA, Plaintiff must comply with all of the impositions detailed at ¶¶ 22 – 25 for the rest of his life solely due to his 1993 offense.

### D. Metro Nashville Police Department Policy and Practice of Enforcing Tennessee's Sex Offender Registry Regime

27. After Tennessee established SORA, the Metro Nashville Police Department ("MNPD") assigned detectives from its "Sex Crimes Unit" to work full time in SORA enforcement, and provided its SORA detectives with a full-time administrative assistant.

28. MNPD enacted formal policies charging its "Sex Crimes Unit" with responsibility to "maintain the Sex Offender Registry," with responsibility for:

    a. Registration of Offenders;

    b. Offender Compliance; and

    c. Coordination of Enforcement Actions.

29. In the May 15, 2015 issue of "Newsline," "The Official Employee Newsletter of the MNPD," MNPD included a picture of MNPD SORA Detectives David Elliott and Maria Sexton with the following caption:

    **Detectives Maria Sexton and David Elliott are responsible for registering, managing and investigating approximately 1100 convicted sex offenders who live in Davidson County. Often these offenders make numerous registry changes, some on a daily basis. Their investigations during 2014 included 519 home verification checks and swearing out 383 criminal warrants against sex offenders who were in violation of state law. These two detectives work tirelessly each day to ensure that those convicted of sex crimes are held accountable for the safety and protection of all Nashvillians.**

30. By the year 2018, MNPD had formally established a separate "Sex Offender Registry Unit" with the following objectives:

    a. Registration of Offenders;

    b. Offender Compliance; and

    c. Coordination of Enforcement Actions.

31. MNPD has consistently required its SORA detectives to proactively enforce SORA through home verifications and "compliance checks" of identified sex offenders, sex offender "compliance operations" undertaken in concert with other MNPD units, investigation of possible SORA violations, arrests for SORA violations, and prosecutions of alleged SORA violations.

32. MNPD has consistently had its SORA unit proactively cooperate with other third-party agencies such as Immigration and Customs Enforcement ("ICE"), the Tennessee Department of Corrections ("TDOC"), the U.S. Marshals Service, and the Tennessee Bureau of Investigation ("TBI") to engage in myriad other officially-sanctioned actions to enforce Tennessee's SORA regime through, *inter alia*, proactively arrest and criminally charge alleged SORA violators.[3]

33. MNPD's policy on SORA enforcement has always been to indiscriminately enforce SORA against all persons deemed under Tennessee law to be "sexual offenders" and "violent sexual offenders," without making any exceptions for those persons whose offenses predated the passage of Tennessee's SORA laws unless specifically ordered to do so by a court.

34. Beginning in 2020, MNPD has been court-ordered to cease SORA enforcement on several specific individuals on the basis that their qualifying sex offenses predated the enactment of SORA.

35. Notwithstanding the court orders referenced in paragraph 34, and the legal memoranda accompanying those orders, Metro has continued to indiscriminately enforce SORA on all persons deemed sex offenders under Tennessee law without regard to whether the person's qualifying offense predated the enactment of SORA.

36. While Tennessee law does require local law enforcement agencies such as Metro to participate in the registration of sex offenders, Tennessee law does not require local law enforcement agencies to take additional proactive SORA enforcement measures.

---

[3] The instances detailed at ¶¶ 45 – 49 are those that Plaintiff is able to discern from publicly available sources.

37. Tennessee law never requires law enforcement officers to arrest or file criminal charges against SORA violators.

### E. Specific Impacts of SORA on Plaintiff

38. Solely due to his 1993 offense, Plaintiff has been subjected to SORA enforcement since SORA was enacted in 2003 and 2004.

39. The impositions detailed at ¶¶ 22 – 25 have substantially interfered with Plaintiff's career, family, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to SORA.

40. SORA severely interferes with Plaintiff's family life. Plaintiff has a 6-year-old grandson, as well as two great-grandchildren aged 3 and 6.

41. Because of SORA Plaintiff is unable to spend time alone with his grandson and great-grandchildren. Plaintiff cannot attend his grandson's soccer games, cannot take him to a park or playground, must have a chaperone in order to have him at the house, and cannot take him to church.

42. Because of SORA, Plaintiff cannot go on family vacations involving minor members of the family.

43. Plaintiff is an avid sports fan, particularly football and basketball, but because of SORA he cannot attend public sports events at athletic fields.

44. For a time Plaintiff's great-grandchildren lived on an Air Force base, and Plaintiff was not permitted to visit them because of the base's rule against registered sex offenders coming onto the base.

45. SORA also interferes with Plaintiff's work. Plaintiff works in construction, and his company frequently gets construction jobs at schools. Plaintiff cannot work these jobs due to SORA, which is a hardship on both him and his company.

## CLAIMS FOR RELIEF

### COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION (42 U.S.C § 1983)

### (ALL DEFENDANTS)

46. Plaintiff hereby reincorporates paragraphs 1 – 45 by reference.

47. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

48. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

49. Defendant Metro has a policy and practice of consciously choosing to enforce Tennessee's SORA regime through proactive enforcement measures, including the proactive arrest and initiation of criminal charges against SORA violators.

50. Metro's policy does make any exception from these proactive enforcement actions for offenders whose qualifying sex offenses predate Tennessee's enactment of the SORA laws, even though Metro has previously been ordered to do so by courts hearing individual *ex post facto* claims made by individual offenders.

51. Tennessee law does not require Metro to engage in the proactive enforcement of the SORA regime, or to arrest or initiate criminal charges against SORA violators.

52. However, Tennessee law does compel Metro to participate in the registration component of the SORA regime.

53. Plaintiff is entitled to declaratory and injunctive relief prohibiting all three Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

54. Plaintiff is entitled to financial damages against Defendant Metro for retroactively proactively enforcing Tennessee's SORA regime against him notwithstanding Plaintiff's constitutional right against *ex post facto* punishment.

## **REQUEST FOR RELIEF**

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That the Court grant a temporary restraining order and preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 1993 offense.

3. That this cause be tried by a jury.

4. That judgment for Plaintiff enter against the Defendants on each count.

5. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 1993 offense.

6. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 1993 offense.

7. That Plaintiff be awarded nominal and compensatory damages against Defendant Metro for its retroactive enforcement of Tennessee's SORA regime on him.

8. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

9. That the court costs in this matter be taxed to Defendants.

10. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 212-5036 / F: (615) 229-6387
E: Kyle@relentlesslaw.com